## LIABILITY OF MUNICIPALITY FOR DAMAGES FROM A LANDSLIDE.

Court of Appeals for Hamilton County.

CITY OF CINCINNATI V. CHARLES FILSER.

Decided, February 14, 1914.

*Municipal Corporations—Removal of Support of Hillside in Improving Street—Earth Slips Upon Adjoining Property—City Liable.*

Where a municipality removes earth from a hillside in improving a street, the soil of which hill is known to be slip soil, without shoring up the bank the support of which is thus removed, and a slide upon the lot of an abutting owner results after a hard rain, liability for the damage thus suffered can not be escaped on the ground that the work was being done by an independent contractor, or that the city was the owner of the dominant tenement, or that the slipping of the hillside following a heavy storm and downpour was an act of God.

*Coleman Avery*, Assistant City Solicitor, for plaintiff in error.
*Geoffrey Goldsmith* and *Guido Gores*, contra.

JONES, E. H., J.; SWING, J., concurs; JONES, O. B., J., dissents in a separate opinion.

The plaintiff in error seeks to reverse the judgment of the court below, assigning many reasons why this should be done.

The case presents numerous interesting questions and has been the source of much discussion among the members of this court, and has received prolonged and careful consideration at our hands. The majority of the court are of opinion that there was no prejudicial error in the trial below and that the judgment of the court of common pleas should be affirmed.

The negligence alleged in the petition, is that the city failed to bolster up or shore up the soil of the hillside while they were engaged in removing dirt from the street opposite the plaintiff's residence and that the city's negligence in this respect caused the damage to plaintiff's property. This statement is sufficient to explain the nature of the complaint although it may not be

complete. The evidence offered at the trial fully supports this charge of negligence in the petition. It is shown by the evidence that the city through its civil engineer and other officers and employees had actual notice of the danger to adjoining property which attended the work upon which they were about to enter. The evidence further shows that at the time the slide occurred precautions, which, in the opinion of expert witnesses produced at the trial, were necessary owing to the known nature of the soil, had not been taken.

. There is no claim in the answer, nor is there any attempt to show by evidence, that it would have been impossible upon the part of the city in the exercise of reasonable care to have prevented the damage which we think the evidence shows followed as a natural consequence of the character of the work being done. The duty resting upon the city as well as upon an individual to so carry on its work, even upon its own premises, as not to interfere with or cause damage to its neighbors, we feel that the evidence was sufficient to warrant the jury in finding actionable negligence on the part of the city.

It is claimed that the work was being done by an independent contractor. This claim we think is fully and ably answered in the brief of counsel for defendant in error. The work was shown to be dangerous to adjoining property owners unless carried on carefully. Such being the case, the city could not absolve itself from liability by employing another to do the work.

It is further claimed that the city was the owner of the dominant tenement and had a right to the lateral support of its street by the ground of defendant in error. This is all true, but the trouble is that it had no application to the facts in this case. The jury must have found in this case that the work being done by the city had a direct connection with the slipping of the hill. The damage was not caused by the weight of the street toppling over the wall that had been built by the defendant in error; it was caused by the dirt from the hill slipping down upon and underneath the street, and the very doctrine urged here by the plaintiff in error made it the duty of the city to provide a lateral

support along the line of its street, and if by failing to do so it caused the injury to another's property, particularly while it was engaged in digging and removing the soil of the hill, we think its failure so to do makes it liable for any damage resulting therefrom.

It is also claimed by plaintiff in error that the damage was due to "an act of God." In this connection it was claimed that just before the slide occurred which caused the damage, there was an extraordinary rainfall. There is nothing in the evidence to show that this rain was an unprecedented one, nor does the evidence clearly establish that it was unusual for the season of the year in this latitude. We hold that such rains as this must reasonably be anticipated and that the city can not be excused from the consequences of its negligence by not contemplating the probability of heavy rain.

We find no error in the charge of the court, nor any prejudicial error in its refusal to give certain special charges requested.

There being in the opinion of the majority of the court no errors apparent on the record, the judgment of the court below will be affirmed.

JONES, O. B., J. (dissenting).

I am not able to agree with the majority of the court in the decision of this case.

In the first place, the amended petition under which the trial was had fails to allege that any claim for damages had been filed with the clerk of the city, and that sixty days had elapsed thereafter before the filing of the suit. Such an allegation was contained in the original petition but it was superseded at the time of the trial by the amended petition and of course is not to be considered. The record of the evidence also fails to show proof that any such claim was filed. This being an action for damages occasioned, as claimed by plaintiff, by a street improvement, Section 3830 of the General Code makes the filing of such a claim a prerequisite.

There are two of these claim sections in the statutes relating to street improvements: Section 3823 applying to claims of

abutting property owners where the damages are obvious; and Section 3830 in its terms applying to "damages arising from any cause." The difference between these two sections is discussed by the Supreme Court in the case of *Cohen* v. *Cleveland,* 43 O. S., 190, in the opinion of the court at page 195. While the language of Section 3830 is general it has been limited by the case of *Davis* v. *Warren,* 43 O. S., 447, to damages arising from street improvements. The failure to file such a claim is a bar to the action (*Ernst* v. *Kunkle,* 5 O. S., 521; *Cohen* v. *Cleveland,* 43 O. S., 190, 195). These sections are also discussed in the opinion of the court in the case of *Ironton* v. *Wiehle,* 78 O. S., 41.

Outside, however, of this failure to show the filing of a claim, in my opinion, the judgment is not sustained by the evidence. The record of the evidence is very unsatisfactory in clearly determining just how the improvement of Glenway avenue was made by the city, and just when and how the damage resulted to the plaintiff below. It does, however, show that Glenway avenue extends up a hill with a steep hill extending upward on the west side and downward on the east side; that the house of the plaintiff was built up to the street line on the east or lower side of the avenue and that opposite it the surface of the hill had slid down covering a part of the west side of the street; that the improvement made by the city consisted simply in repaving a macadamized street with granite pavement and the building of a concrete retaining wall along the west side to prevent future slides. It appears that the land lying west of Glenway avenue up as far as Wilder avenue was owned by a private party, the traction company, who had thrown upon it masses of dirt taken off of Wilder and Warsaw avenues. All of the witnesses agree that this hillside was composed of what they call "slip soil" that had been sliding more or less for years, ever since they can remember. It also appears that plaintiff had suffered damages to his house by previous slides, and that his sidewalk and water-pipes had been broken from time to time by the bulging up of the street; that his foundation had been thrown down and was rebuilt because of a slide about three

years before the one complained of in this case. It is hard to
determine from the evidence just what the facts are as to the
particular slide or slides which caused the damage. The only
testimony given is by plaintiff himself and another property
owner, Mr. Ahern, and Mr. Kuhlman, who was at one time build-
ing inspector, and Mr. Rees McDuffie, who operated the incline
railway south of this property and who was an old resident of
that locality. None of these witnesses give a detailed account of
the method of the improvement or the nature of the slide which
caused the damage. The two latter witnesses named above ad-
vised the city engineer and his assistant that certain precautions
should be taken to avoid a hill slide, the latter suggesting that
the soil which had been placed at the top of the hill on the prop-
erty of the traction company should be first removed by the
city, and Mr. Kuhlman advising that the engineer should drive
piles to prevent sliding. He afterwards admitted that the piles
were driven by the engineer in the trenches which were made
for the foundations of the concrete wall and were driven just
as he thought they should be. It appears that these trenches
were dug in sections not more than fifty feet long and piles
were driven in the bottom and the concrete laid upon them, and
that these trenches were not dug until after the damage to
plaintiff's house. Plaintiff himself gives the best story of this
damage, and his testimony would indicate that there was but one
slide which caused the damage and which occurred on June 27th
or 28th and was contemporaneous with a severe and unusual
rainstorm which was described by the United States Observer
as being very heavy, and which defendant claims caused the
slide.

It appears that at the time of this rainstorm the only work
that had been done in the matter of the improvement was the
removal of the slope of earth that had encroached upon the west
side of the street in the cleaning off of the street preparatory
to repaving, and that the trench to which plaintiff attributed
the slide had not at that time been dug.

The allegations of negligence in the amended petition were
that the defendant and its agents knew or should in the exercise
of reasonable care have known that to improve Glenway avenue,

without bolstering or shoring up the street or the land above by wall or shoring so as to prevent a slide or slip of the said street against and into said lot and against the fall of soil and dirt against said lot, would as a direct consequence cause a slip of the said street and of said lot, and would cause the fall of soil from said street onto said lot and would thereby cause damage to said lot and to the improvements thereon; and that

"The defendant city, despite its knowledge or despite the knowledge which in the exercise of ordinary care it should have had, or the nature of the soil and of the locality and of the consequences of its own acts, negligently failed in the exercise of ordinary care to shore up said street or the land above it as a protection to plaintiff's aforesaid lot against damage."

The plaintiff can only recover by proving the acts of negligence alleged in the petition and that such negligence caused the damage. *R. R.* v. *Kistler,* 66 O. S., 326, 333; *R. R.* v. *Lockwood,* 72 O. S., 586, 590-1; *Elster* v. *Springfield,* 49 O. S., 82, 101.

In my opinion the negligence complained of was not proven but is merely a matter of inference, as there was no attempt to show in any way how the city could have shored up or bolstered up either the street or land to the west of the street without first digging foundations for the necessary retaining walls, as was really done in this case.

"To establish negligence there must be direct proof of facts constituting such negligence, or proof of facts from which negligence may be reasonably presumed. There should be no guessing either by court or jury." *R. R.* v. *Marsh,* 63 O. S., 236.

The rights of plaintiff and the city as owners of adjoining premises come under the law relating to lateral support. The city as the owner of the street, the dominant tenement, owed no legal duty to hold up plaintiff's house as the servient tenement. On the contrary it was the duty of the plaintiff or his predecessor in title, when his cellar wall was excavated and the house was built, to so construct his cellar wall as to sustain and support the street as fully as the hill in its natural state would have done. The same rule might be invoked to require the city to hold the hill west of the street from sliding while in its natural

condition, but could not be extended to require it to support same where it was caused to slide by the fact that large quantities of excess dirt had been piled thereon by its owners. *U. S.* v. *Peachey,* 36 Fed. Rep., 161; *Village of Haverstraw* v. *Echerson,* 192 N. Y., 54, 59; *Milburn* v. *Fowler,* 27 Hun., 568; 1 Cyc., 775, 777.

I think the court erred in refusing to give the following special charges whch were asked by the defendant and which I believe should have been given:

"4*b*. The petition ayers that in the exercise of ordinary care the street, Glenway avenue, and the land above, while the work in Glenway avenue was in progress should be bolstered and shored up and retained by walls and shoring to prevent a slide or slip of said street against and on to plaintiff's lot, and that the city negligently failed in the exercise of ordinary care to shore up said street or the land above. This being the only negligence alleged is the only negligence you can consider. Plaintiff must prove by a preponderance of the evidence that in the exercise of ordinary care the city should have done things he mentions and that the city negligently failed to do those things. Unless plaintiff has proved all this by a preponderance of the evidence as aforesaid, your verdict should be for the defendant.

"6. The jury are charged if they find that the slide of which plaintiff complains was caused by extraordinary rain, or would not have occurred excepting for an extraordinary rain, the verdict should be for the defendant. By extraordinary is meant not necessarily a rainfall of a volume or intensity which never had before occurred in this vicinity, but one which is so heavy as to be unusual, and not to be reasonably anticipated and guarded against by persons using ordinary care and prudence in the progress of work of the kind which the evidence shows was called for in the improvement of Glenway avenue.

"7. The jury are charged that if persons other than the city of Cincinnati piled earth or other materials on the space between Wilder and Glenway avenues west of plaintiff's premises which caused the slip of which plaintiff complains, the verdict should be for the defendant."

Defendant was entitled to have these charges, which are correct in form, given before the argument to the jury.