HENRY A. AMIRO vs. JOHN J. CROWLEY.

Norfolk.    March 22, 1926. — May 26, 1926.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Contract*, Construction, Charter party.    *Ship*.

A bailee of a schooner under a charter party is liable for loss of the schooner only in case of negligence of himself or of his servants or agents, unless his liability is enlarged by special agreement.

A charter party of a schooner for a term of three months provided: "The party . . . [hiring the vessel] warrants that during the said term of three months, the said schooner or vessel shall be kept seaworthy, and in every respect fit, and provided with every requisite, and with a sufficient crew and provisions, as the case may be, and shall in every respect indemnify the . . . [owner] from any expenses or charges therefor." In an agreement contemporaneously entered into, the hirer agreed to pay the premiums on policies insuring the schooner against marine risks. *Held*, that the two instruments did not entitle the owner to recover the value of the schooner from the hirer when, while in entire charge of a master and a crew of the hirer, she was lost in a storm without negligence on the part of any one.

CONTRACT OR TORT.  The declaration as amended was in six counts.  The first count was against the defendant as bailee of the defendant's schooner "Annie L. Spindler." In the second count the plaintiff alleged that the defendant induced the plaintiff to enter into a charter party of the schooner through false representations as to the use to which it was to be put.  In the third count, the plaintiff alleged that the schooner was lost through negligence of the defendant.  The fourth count was based upon the charter party described in the opinion.  The fifth count was upon an alleged conversion of the schooner by the defendant.  Writ dated April 30, 1924.

In the Superior Court, the action was heard by *McLaughlin*, J., without a jury.  The judge found the facts stated in the opinion and also found the following:

A provision of the charter party not quoted in the opinion was as follows: "The party of the first part agrees to take

and receive on board the said schooner or vessel, during the said term of three months, all such lawful goods and merchandise, as the party of the second part, or his authorized agent, or agents or attorneys, may think proper or legal to ship.''

''When the vessel came ashore at Provincetown it contained in its hold a large quantity of intoxicating liquor. The defendant contended that the vessel was engaged in the illegal enterprise of carrying liquor to this country in violation of our laws, and that the plaintiff when he let the vessel was aware that it would be used for this purpose. While it is difficult to believe under all the circumstances that the plaintiff did not suspect that the vessel was intended for this traffic, and while I believe that he was indifferent as to the use to which it might be put, there is nothing to indicate that the owner intended or that it was his purpose that the vessel should be used for the unlawful carriage of liquor. The defense that the transaction was vitiated by illegality is not sustained.''

The judge stated, as the principal question to be considered, ''whether the defendant, the charterer, expressly or impliedly guaranteed the safe return of the vessel and is therefore liable for the loss notwithstanding the absence of any proof of negligence on his part or on that of the master or crew.''

The law of Nova Scotia was in evidence. The judge found: ''I do not find that the law of Nova Scotia differs from what seems by the weight of authority to be the law in this country;'' and stated that law to be: ''The rule applicable to ordinary bailments that the bailee is liable only for negligence, unless there is some express agreement or warranty enlarging his liability, seems to apply to the hire of vessels.''

The plaintiff asked for the following rulings:

''1. Upon the testimony of the plaintiff's witnesses the plaintiff is entitled to recover.

''2. Upon all the evidence the plaintiff is entitled to recover.''

The judge further ruled and found ''that there was an

implied condition in the charter party that if before the time for complete performance had arrived the subject matter of it, the chartered schooner, were destroyed through no fault either of the owner or the charterer, the agreement to keep it fit and seaworthy was not to be performed. . . . The plaintiff's requests, so far as they are inconsistent with these rulings, are denied. Upon all the evidence I find for the defendant."

There was no specific ruling upon the allegations of the first, second and sixth counts of the amended declaration other than was implied in the statement of the judge above quoted as to the "principal question to be considered" and in his finding for the defendant.

The judge reported the action to this court for determination. The sole question argued by the plaintiff before this court was that stated by the trial judge to be "the principal question to be considered."

The case was submitted on briefs.

· *W. J. Spaulding, C. H. Baldwin, & H. J. Shaw,* for the plaintiff.

*W. H. Lewis & M. L. McGrath,* for the defendant.

SANDERSON, J. This is an action by the owner of a vessel to recover its value from the defendant to whom it was chartered. The judge found for the defendant and reported the case.

"On October 16, 1922, at Yarmouth, Nova Scotia, the plaintiff and defendant executed a charter party . . . by the terms of which the schooner 'Annie L. Spindler' was chartered to the defendant for the term of three months. Simultaneously the same parties executed another agreement . . . from which it appears that the defendant agreed to pay the premiums on insurance policies covering marine risks and taken out in the sum of $10,000 by the plaintiff, the owner. The defendant, having paid the plaintiff the sum stipulated for the hire of the vessel and having paid the insurance premiums, placed his own master and crew aboard as well as all necessary supplies and provisions and the vessel sailed from Yarmouth. On December 28, 1922, it was cast ashore at Provincetown, Massachusetts, in a storm of unusual

violence and became a total wreck. The loss was not attributable to negligence on the part of any one. The insurance companies have refused to pay the insurance and the policies have ever since been in the possession of the plaintiff."

The plaintiff contended that by the terms of the charter party the defendant became responsible for the loss of the vessel, whether its loss was due to negligence or solely to the perils of the sea or the act of God, and relied in support of that contention upon these terms of the agreement: "The party of the second part [the defendant] warrants that during the said term of three months, the said schooner or vessel shall be kept seaworthy, and in every respect fit . . . and shall in every respect indemnify the party of the first part from any expenses or charges therefore."

A bailee is liable only for negligence unless by express agreement his liability is enlarged. *Sun Printing & Publishing Association* v. *Moore*, 183 U. S. 642. *Young* v. *Leary*, 135 N. Y. 569. The terms of the agreement quoted are not fairly susceptible of the interpretation that the charterer guaranteed the safe return of the vessel. They specifically refer to keeping the vessel seaworthy and fit and provide that if the charges and expenses for this work should be incurred by the owner the charterer would reimburse him. " . . . where from the nature of the contract it appears that the parties must from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then, in the absence of any warranty that the thing shall exist, the contract is to be construed not as a positive contract, but as subject to an implied condition that the parties shall be excused in case before breach performance becomes impossible from the accidental perishing of the thing without the fault of either party." *Hawkes* v. *Kehoe*, 193 Mass. 419, 423. *Texas Co.* v. *Hogarth Shipping Co. Ltd.* 256 U. S. 619, 629. *Wells* v. *Calnan*, 107 Mass. 514. *Butterfield* v. *Byron*, 153 Mass. 517. The owner agreed that the whole vessel should be at the sole use and disposal of the charterer for the term of three months, and that no goods should be loaded on board otherwise than from the charterer without his consent in

writing; and the owner agreed to take and receive on board
during the term all such lawful goods and merchandise as
the charterer might think proper to ship.    But if the con-
tention of the plaintiff, that the entire vessel was let to the
defendant with the transfer of command and possession, and
control of its navigation and crew for the specified period,
be true, still its loss by perils of the sea without negligence
would excuse him from his obligation to keep it "seaworthy,
and in every respect fit."

The case is to be distinguished from those in which the
charterer has assumed the absolute obligation to return the
vessel.    *Sun Printing & Publishing Association* v. *Moore,
supra.*    See *Phillips* v. *Stevens,* 16 Mass. 238; *Mill Dam
Foundery* v. *Hovey,* 21 Pick. 417, 441; *Drake* v. *White,* 117
Mass. 10; *Harvey* v. *Murray,* 136 Mass. 377.

The finding of fact, that there is nothing to indicate that
the owner intended, or that it was his purpose, that the vessel
should be used for the unlawful carriage of liquor, eliminates
the defence of illegality.    The rulings of the judge were
right.    The plaintiff's requests for rulings in so far as they
were not given or rendered immaterial by the findings of fact
were denied properly.    In accordance with the terms of the
report, judgment is to be entered for the defendant.

*So ordered.*